IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AHMED ABDO GUNID and MOHAMMED AKRAM ABDULLAH ALOTHMANI, | )<br>)<br>) |
| Plaintiffs, | )   Case No. 24-cv-11116<br>)<br>)   Honorable Joan B. Gottschall |
| v. | )<br>) |
| MARCO RUBIO,* in his official capacity as UNITED STATES SECRETARY OF STATE, et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

United States citizens like plaintiff Ahmed Abdo Gunid may sponsor their relatives' applications for a "family preference" visa, which allows the relative and, as most relevant to this litigation, the relative's children to emigrate to and reside in the United States. *See generally Dep't of State v. Munoz*, 602 U.S. 899, 901–02 (2024). Gunid received what amounted to an initial eligibility determination for his daughter and her minor children, including co-plaintiff Mohammed Akram Abdullah Alothmani,[1] in 2010. *See* Compl. ¶¶ 14–17. Alothmani was thirteen years old at the time. *See* Compl. Ex. B at 1, Dkt. No. 1-2 (birth certificate). He and his family waited ten years before a visa became available. Compl. ¶ 19. In 2024, the State Department advised plaintiffs that Alothmani had "aged out" while he was waiting because he was no longer under age twenty-one in 2020, when a visa became available. *See* email messages, Compl. Ex. S–U, Dkt. No. 1-2.

---

* The current officeholder has been automatically substituted for the former Secretary of State named in the complaint, by operation of Federal Rule of Civil Procedure 25(d).

[1] This plaintiff's surname is spelled inconsistently as "Al Othmani" and "Al-Othmani" in the documents attached to the complaint. *See, e.g.*, Dkt. No. 1-2 at 8, 49. This opinion employs the spelling used in the complaint. Dkt. No. 1 at 1.

1

Gunid and Alothmani filed this lawsuit in October 2024, asserting claims under the Fifth Amendment's Due Process Clause and the Administrative Procedure Act, 5 U.S.C. §§ 701–06, challenging the State Department's interpretation, reflected in its Foreign Affairs Manual, of provisions of the Child Status Protection Act (CSPA), Pub. L. No. 107-208, 116 Stat. 927 (2002), codified at 8 U.S.C. § 1153(h). Approximately five months after the complaint was filed, on March 17, 2025, a consular officer, consistent with the State Department's position described above (the consular officer is part of the State Department), denied plaintiffs' visa application for the same reasons given in the State Department email chain.

Defendants have filed a motion to dismiss the complaint for lack of Article III standing and failure to state a claim. They argue that plaintiffs have not named a consular officer as a defendant and that the doctrine of consular non-reviewability bars plaintiffs' claims because only a consular officer (and not the Secretary of State) has authority to issue a visa to Alothmani. *See* 8 U.S.C. §§ 1104(a), 1201(a). For the reasons discussed herein, the court denies defendants' motion to dismiss.

## Background

Eligibility for many immigration benefits depends on whether the would-be beneficiary meets the Immigration and Nationality Act's (INA) definition of "child." *See, e.g.*, 8 U.SC. §§ 1151(b)(2)(A)(i), 1153(a). The INA defines a "child" as a person who is, among other things, no more than 21 years old. 8 U.S.C. § 1101(b)(1). The issue here is what happens when a person "ages out," that is, reaches age twenty-one, while waiting for an immigrant visa to become available or for government officials to process paperwork.

Broadly speaking, the CSPA "ensures that the time Government officials have spent processing immigration papers will not count against the beneficiary in assessing his status." *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 45 (2014) (opinion of Kagan, J.) (citations

2

omitted); *see id.* at 75–79 (Roberts, C.J., concurring in the judgment).  But like many aspects of immigration law, the statute has several caveats and provisos.  *See* 8 U.S.C. § 1153(h).  The CSPA's language is, in the words of three justices of the Supreme Court, "complex but, with some perseverance, comprehensible."  *Scialabba,* 573 U.S. at 51 (opinion of Kagan, J.); *see generally id.* at 51–54.  The statute need not be parsed in detail here because the State Department's statutory interpretation is not at issue at this stage of the proceedings.  Suffice to say, plaintiffs raise complex and contested statutory interpretation questions, arguing that another federal agency, U.S. Citizenship and Immigration Services (USCIS), has interpreted the CSPA in a manner that conflicts with the State Department's interpretation.  *See* Resp. Opp'n Mot. to Dismiss 12–14, Dkt. No. 14.

       The complaint challenges a State Department determination communicated in an email message dated February 6, 2024, to plaintiffs' lawyer.  That message, which was sent from a State Department email address for legal correspondence, *see* 9 FAM 103.4-1, marked the culmination of a chain of messages in which the State Department made clear that it had determined that Alothmani had "aged out" of family preference visa eligibility and that it would not reconsider its decision ("January–February 2024 emails").  *See* email messages dated Jan. 2; Jan. 16; and Feb. 6, 2024, Compl. Ex. S–U, Dkt. No. 1-2.  Gunid and Alothmani commenced this lawsuit in October 2024, naming as defendants the State Department, the Secretary of State, and the U.S. embassy in Djibouti.  Compl. 1.  They have not sued a consular officer.

       Plaintiffs seek injunctive and declaratory relief.  They trace the January–February 2024 emails to policy statements in the State Department's Foreign Affairs Manual, commonly cited as "FAM."  *See* Compl. ¶¶ 24–31.  The FAM provision plaintiffs cite sets out the Secretary of State's interpretation of portions of the CSPA.  *See* 9 FAM 502.1-1(D)(4).  Plaintiffs allege and

3

argue that the CSPA interpretation set forth in the FAM is at odds with the statute's text, as well as with the USCIS's interpretation. *See* Resp Opp'n Mot. to Dismiss 12–14.

**Analysis**

The consular non-reviewability doctrine "instructs that ordinarily, visa decisions made by consular officers abroad are not subject to judicial review." *Pak v. Biden*, 91 F.4th 896, 900 (7th Cir. 2024); *see Hazama v. Tillerson*, 851 F.3d 706, 708 (7th Cir. 2017). Rooted in separation of powers principles, the doctrine prevents indirect attacks on a consular officer's decision to deny a visa. *See Pak*, at 900–01 (discussing *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017)). "Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions." *Id.* at 900 (quoting *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019)).

The fundamental problem with defendants' motion to dismiss is that the complaint identifies no consular officer's decision plaintiffs want the court to second guess. *See* Dkt. No. 1. The complaint makes no reference to a consular officer's decision, and as far as the record shows, no consular officer considered, much less refused, Alothmani's visa application before this lawsuit was filed.

Defendants attempt to recharacterize the complaint as challenging a consular officer's after-the-fact refusal to issue a visa to Alothmani. The consular officer's decision is described in the declaration of Anya Krivtsun, an attorney-adviser employed by the State Department. *See* Krivtsun Decl. ¶ 1, Dkt. No. 12-1 (exhibit to defendants' motion). According to a State Department database, the U.S. embassy in Djibouti advised Alothmani by email on March 17, 2025, that a consular officer had refused his visa application, stating, "[Y]our statutory age under the Child Status Protection Act (CSPA) was 21 or older on the date of visa availability based on your date of birth." Krivtsun Decl. ¶ 6 (quoting email message, the full text

4

of which is not presently in the record).

True, the consular officer's March 17, 2025, refusal and the earlier January–February 2024 emails challenged in the complaint rest on similar legal and factual grounds. But "the Supreme Court has never entirely slammed the door shut on review of consular decisions on visas." *Hazama*, 851 F.3d at 708; *see id.* at 709–10. The defendants here cite no case applying the doctrine to a consular officer's decision made after litigation had commenced. *Contrast Matushkina*, 877 F.3d at 291 –95; *Garcia v. Baker*, 765 F. Supp. 426, 428 (N.D. Ill. 1990) (both cited by defendants at Reply Supp. Mot. to Dismiss 4–5, Dkt. No. 15). On the contrary, the majority of courts do not apply the consular non-reviewability doctrine if adjudication of a visa before a consular officer was ongoing when the lawsuit was filed. *See Patel v. Sanders*, 2025 WL 1039505, at *5 (N.D. Ill. Apr. 7, 2025) (collecting citations and discussing majority and minority views); *Toua Vang v. Franceschi*, 2024 WL 4370855, at *6–8 (E.D. Wis. Oct. 2, 2024). Courts have also ruled that it does not offend separation of powers principles to adjudicate a claim that a consular officer has unreasonably delayed processing a visa application. *See, e.g.*, *Ebrahimi v. Blinken*, 732 F. Supp. 3D 894, 905–06 (N.D. Ill. 2024); *Arif v. Rubio*, 2025 WL 1866661, at *8 (N.D. Ill. July 7, 2025); *Zadeh v. Blinken*, 2024 WL 2708324, at *5–6 (N.D. Ill. May 20, 2024).

The separation of powers arguments for applying the doctrine are even less persuasive here, where, as far as the current record shows, a consular officer had not considered or adjudicated Alothmani's visa application at the time the lawsuit was filed, and the plaintiffs challenge a State Department policy predating the consular officer's decision. "[I]t is well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them 'to assure that the executive

5

departments abide by the legislatively mandated procedures.'" *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025) (quoting *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir. 1985)). Since plaintiffs raise such a challenge, the consular non-reviewability doctrine does not bar the claims pleaded in the complaint.

      Defendants also contest the complaint's sufficiency to allege standing. To show that they possess standing, plaintiffs must "allege sufficient factual matter to support the inference that standing exists," by showing that the three standing requirements are met: "(1) an injury in fact that is (2) fairly traceable to the challenged action of the defendant and (3) is likely, not merely speculative, that the injury will be redressed by a favorable decision." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citation modified). Defendants argue that redressability is lacking here because plaintiffs ultimately want a visa to be issued to Alothmani, and, since a consular officer has sole statutory authority to issue one, the court cannot provide effectual relief to plaintiffs unless a consular officer is joined as a defendant.

      Like their non-reviewability argument, defendants' standing argument rests on an impermissible attempt to recharacterize the complaint's allegations. Again, plaintiffs trace their injuries not to the consular officer's visa denial decision, made five months after the complaint was filed, but instead to the Secretary of State's policy reflected in the FAM and in the January–February 2024 email messages applying the FAM policy to determine that Alothmani had aged out of visa eligibility. *See* Compl. ¶¶ 34–39, 65. The correctness, or incorrectness, of the Secretary of State's policy is not presently before the court, and the statutory scheme, regulatory framework, and surrounding history are complex, so much so that the parties devote nearly a third of their briefing to those subjects. *See, e.g.*, Mem. Supp. Mot. to Dismiss 2–6, Dkt. No. 12.

6

For purposes of resolving the instant motion to dismiss, the court need only rule that plaintiffs have plausibly traced an ongoing injury in the form of their inability to obtain a visa for Alothmani to the Secretary of State's interpretation of the CSPA adopted in the FAM. *See Pietersen*, 138 F.4th at 559. If the court adopts plaintiffs' construction of the statute, its ruling will be binding upon the Secretary of State and would effectively eliminate the only obstacle to Alothmani's obtaining an F-3 visa of which this court is aware. That more than suffices to demonstrate redressability. *See id.* at 556–60; *United Afr. Org. v. Biden*, 620 F. Supp. 3d 756, 766–67 (N.D. Ill. 2022); *see also Cook County v. Wolf*, 962 F.3d 208, 218–19 (7th Cir. 2020).

For the reasons stated above, defendants' motion to dismiss the complaint is denied. A joint initial status report is due within twenty-one days, that is, on or before February 23, 2026.

Date: February 2, 2026    /s/ Joan B. Gottschall
United States District Judge